IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BRANDON ROBERT WILSON, <br><br> Defendant. | CR 17–17–BU–DLC <br><br> ORDER |

Before the Court is Defendant Brandon Robert Wilson's ("Wilson") Opposed Motion to Suppress (Doc. 18). Wilson seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether evidence gained through the execution of a search warrant should be suppressed. Contingent upon a favorable resolution to the *Franks* Hearing, Wilson also seeks suppression of evidence gained subsequent to the warranted search as fruit of the poisonous tree. (Doc. 18 at 2.) Also before the Court are Wilson's Motion to Withdraw Certain Exhibits and to File Same Under Seal (Doc. 20), Motion to Re-File Under Seal (Doc. 21), and Unopposed Motion to Extend Plea Deadline and to Continue Trial for 30 Days (Doc. 27).

-1-

Wilson has been charged with felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1).  The indictment alleges that on or about April 11, 2017, Wilson knowingly and unlawfully possessed 42 different firearms.  (Doc. 1 at 1–4.)  April 11, 2017, was the date the search warrant at issue was executed.  (Docs. 19 at 8; 23 at 5.)  Wilson claims that he is entitled to a *Franks* Hearing because he has made a "substantial preliminary showing" that false statements and omissions were knowingly and intentionally included in the warrant application by United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent Riley J. Cook ("Agent Cook") and that Magistrate Judge Jeremiah C. Lynch would not have found probable cause to support the warrant had the omitted facts been included and the false statements excluded.  (Doc. 19 at 20.)  If Wilson were granted a *Franks* Hearing and succeeded in establishing, by a preponderance of the evidence, that Agent Cook made deliberate false statements and omissions in his warrant application which are material to a finding of probable cause, then the search warrant would be voided and the fruits of the search excluded from evidence.  *Franks*, 438 U.S. at 156.

The Government counters that Wilson has failed to make the requisite showings which would entitle him to a *Franks* Hearing because the warrant application did not include falsities and was not incomplete.  Further, the

Government claims that the allegedly false statements and material omissions were not necessary for Judge Lynch to find probable cause to support issuing the warrant. (Doc. 23 at 2.)

For the reasons herein explained, the Court finds that Wilson has not made the requisite showing for a *Franks* Hearing and, therefore, his Motion to Suppress will be denied. However, due to the sensitive nature of the exhibits specified in his Motion to Withdraw and Motion to Re-File, the Court will grant these two Motions. Additionally, the Court will extend the plea deadline and continue trial in this matter.

## Discussion

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Additionally, the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* Whether or not a search was reasonable is a determination that must be made by considering the facts as they existed at the time the invasion occurred. *United States v. Jacobsen*, 466 U.S. 109, 115 (1984). When "passing on the validity of a warrant," the reviewing court is limited to

considering only the information presented to the magistrate judge. *Aguilar v. Texas*, 378 U.S. 108, 109 n. 1 (1964).

In *Franks v. Delaware*, the Supreme Court held that criminal defendants have a limited right under the Fourth and Fourteenth Amendments to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. *Herring v. United States*, 555 U.S. 135, 145 (2009). Under *Franks*, a criminal defendant is entitled to a hearing when he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and the allegedly false statement is "necessary to the finding of probable cause." 438 U.S. at 155–56. The Ninth Circuit has further clarified that a hearing is not warranted unless:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

*United States v. DiCesare*, 765 F.2d 890, 894–95 (9th Cir. 1985) (citing *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983)).

The limited right of criminal defendants to challenge false statements in a warrant affidavit under *Franks* also allows criminal defendants to "challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead." *United States v. Stanert*, 762 F.2d 775, 780–81 (9th Cir. 1985). To warrant a *Franks* Hearing for an alleged material omission, the defendant must first make a "substantial preliminary showing that the affidavit contained a misleading omission and that the omission resulted from a deliberate or reckless disregard for the truth" and, second, must demonstrate "that had there been no omission, the affidavit would have been insufficient to establish probable cause." *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994). Omissions are material only when the omitted facts "cast doubt on the existence of probable cause." *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992).

At bottom, Wilson must show that the affidavit, purged of the alleged falsities and supplemented by the alleged omissions, would be insufficient to support a finding of probable cause. *See Stanert*, 762 F.2d at 782. Probable cause exists if the affidavit provides a substantial basis for believing that criminal activity might have been occurring at the place to be searched. *See United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005). "Probable cause

requires a fair probability, but not a certainty, that a search would yield evidence of crime." *Id.* at 1217 (citing *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983)).

   **I.   Alleged False Statements**

Wilson alleges that Agent Cook included false statements in his affidavit in support of his warrant by misrepresenting the certainty of two informant's as to Wilson's exact address.  On March 7, 2017, Diana Jenks ("Jenks"), Wilson's mother, reported to Gallatin County's Sheriff's Office Deputy Sandy Schroeder ("Deputy Schroeder") that she had seen firearms at Wilson's home when she visited him in December of 2016.  (Docs. 19 at 13; 23 at 2, 4.)  On March 21, 2017, Candice Wilson ("Candice"), Wilson's estranged wife, reported to Agent Cook and ATF Special Agent Philip Swain ("Agent Swain") that Wilson lived on Jordan Spur Road.  (Docs. 19 at 14; 23 at 8.)  Particularly, Wilson claims that the following statements contained in Agent Cook's affidavit are false:

1. "Jenks further informed Deputy Schroeder that she had visited WILSON in December, 2016 at WILSON's residence located at 4585 Jordan Spur Road, Bozeman, Montana 59715."  (Doc. 19-8 at 11.)

2. "Jenks confirmed that she had visited WILSON in December 2016, at which time Jenks observed multiple firearms in WILSON's bedroom of the residence located at 4585 Jordan Spur Road, Bozeman, Montana 59715."  (*Id.* at 13.)

3. "Candice stated that WILSON currently resides at 4585 Jordan Spur Road, Bozeman, Montana 59715."  (*Id.* at 14.)

(Doc. 19 at 10–14.) In support of Wilson's assertion that these statements are false, he provided the Court with the tape-recording of Agents Cook and Swain's interviews of Jenks and Candice. Simply put, Wilson claims that statements 1 and 2 above are false because Jenks did not know Wilson's exact address herself when she talked with Deputy Schroeder and, later, when talking with Agent Cook and Swain, she was given a list of three possible street names and showed confusion as to which one was correct. (*Id.* at 10–14.) Wilson then claims that statement 3 was false because Candice told the Agents that Wilson was living on Jordan Spur Road, but did not state the exact street address.[1] (*Id.* at 14.)

Wilson claims that these statements are deliberate falsities included to imply that the informants supplied law enforcement with Wilson's exact address. Wilson imputes that Agent Cook included these false statements with the intention of misleading Judge Lynch into finding probable cause. Wilson attaches great significance to the fact that Jenks did not give law enforcement Wilson's exact address but repeatedly "let the Sheriff locate" the address. (*Id.* at 11.) However, the Court finds that this information belies Wilson's argument. While Jenks may have been inconsistent in her recollection of Wilson's address, she was consistent

---

[1] The Court finds the fact that Candice did not supply the Agents with the exact Jordan Spur Road address irrelevant. Deleting the actual Jordan Spur Road address number would not change a finding of probable cause in light of the fact that Candice told the Agents that Wilson lived on Jordan Spur Road.

in stating that she could not remember the address and had let law enforcement locate the address. (*Id.*)

Jenks consistently allowed law enforcement to supply her with Wilson's address and law enforcement consistently confirmed that 4585 Jordan Spur Road was the address she was referring to. When Jenks called Deputy Schroeder on March 7, 2017, she "let" Deputy Schroeder locate Wilson's exact address, which was confirmed to be 4585 Jordan Spur Road. (Doc. 19 at 11.) Agent Cook and Agent Swain were aware that Deputy Schroeder had confirmed Wilson's address as 4585 Jordan Spur Road. (Doc. 23-1 at 1.) Agents Cook and Swain did significant additional investigation to ensure that 4585 Jordan Spur Road was Wilson's address and the address that Jenks was referring to. The Agents confirmed that the address conformed to the physical description provided by Jenks. (Doc. 23 at 8–9.) The Agents contacted NorthWestern Energy Company and confirmed that the registered user for 4585 Jordan Spur Road was Wilson as of November 17, 2016. (*Id.* at 9.) The Agents contacted Candice who also told the Agents that Wilson lived on Jordan Spur Road and had lived there since the fall of 2016. (*Id.* at 8.)

Whether Jenks knew the exact address or was supplied the address by law enforcement when she consistently relied upon law enforcement to do so is

irrelevant to a finding of probable cause. Probable cause would still follow if Agent Cook were to have noted that Jenks asked law enforcement to confirm the address because she did not know it. The Court does not find that Agent Cook made a false statement by including the address Jenks referred to rather than detailing her confusion and reliance on law enforcement for the address in his affidavit. Nor does the Court find that probable cause rested upon this statement.

Further, the Court finds the undisputed fact that Jenks told law enforcement that she had seen firearms in Wilson's bedroom when she had visited him for Christmas in 2016 significant. (Doc. 19-8 at 11, 13.) All of the above information indicates that Jenks visited Wilson at 4585 Jordan Spur Road when she visited him in December 2016. While Jenks could not remember Wilson's exact address, she certainly remembered when she had visited him. Agents Cook and Swain confirmed that Wilson lived at 4585 Jordan Spur Road in December of 2016. Again, Jenks repeatedly relied upon law enforcement to supply Wilson's address and law enforcement consistently confirmed that it was 4585 Jordan Spur Road. Accordingly, the Court finds that the three challenged statements are not false.

Moreover, the Court is convinced that even if these statements were false, excluding these statements would not effect the determination that the affidavit supported a finding of probable cause to issue the warrant. After removing any

statement in the affidavit which appears to ascribe knowledge of Wilson's exact Jordan Spur Road address, the affidavit still includes the information that Jenks visited Wilson in December of 2016 and that Agents Cook and Swain had performed significant investigation to confirm that Wilson's address was 4585 Jordan Spur Road at the time that Jenks visited him. (Doc. 19-8.) Probable cause is especially apparent when considering the whole affidavit which also includes substantial and reliable information provided by Candice indicating that Wilson removed 21 firearms from her residence, purchased firearms from online dealers, hunted with firearms annually, and purchased a specific firearm from Four-Corners Tactical in Bozeman, MT. (Doc. 19-8 at 14–15.) Additionally, Candice supplied the Agents with numerous photos, emails, and a video showing that Wilson was in possession of firearms. (Doc. 19-8 at 16.) Therefore, the Court finds that the challenged statements are not "necessary to find probable cause." *DiCesare*, 765 F.2d at 895. Consequently, Wilson has failed to make the requisite showing as to the alleged false statements.

## II. Misleading Omissions

Wilson further asserts that Agent Cook made misleading omissions in his affidavit. (Doc. 19 at 14.) Again, Wilson must first make a "substantial preliminary showing that the affidavit contained a misleading omission and that

the omission resulted from a deliberate or reckless disregard for the truth" and, second, must demonstrate "that had there been no omission, the affidavit would have been insufficient to establish probable cause." *Kyllo*, 37 F.3d at 529. Omissions are material only when they "cast doubt on the existence of probable cause." *Garza*, 980 F.2d at 551.

### A. Allegedly material omissions relating to Jenks

First, Wilson alleges that Agent Cook omitted the fact that Jenks did not recognize the Jordan Spur Road address and could not remember the address. For the reasons explained above, the Court does not find this to be a misleading or material omission. Wilson also claims that Agent Cook omitted that "Jenks observed the guns . . . on Springhill Community Road." (Doc. 19 at 15.) Again, Jenks admitted that she could not remember Wilson's address and had relied upon law enforcement to give it to her. In light of this, the Court is not convinced that Jenks ever stated that she saw the guns on Springhill Community Road, despite Wilson's arguments to the contrary.² Jenks consistently relied on law enforcement

---

² Agent Cook supplied Jenks with a list of three addresses when he asked her which house was Wilson's and Jenks replied: "I had to get that from the police, it was the one on, um, the first address you mentioned." (Doc. 19 at 11.) Wilson emphasizes that the first address in the list was the Springhill Community Road address. Agents Cook and Swain knew which address Deputy Schroeder had given Jenks. Therefore, owing to her apparent confusion and the Agents independent knowledge of which address "the police" had given Jenks, the Court does not find it significant that Jenks indicated the Springhill Community Road address, which was the first in the list. She indicated it was the first in the list but also indicated it was the one

who consistently confirmed that the address was on Jordan Spur Road. Her confusion was apparent and does not result in making this alleged omission a misleading or material one.

Second, Wilson alleges that Agent Cook omitted Jenks description of the residence she visited as looking like a barn and located on a hill. Wilson directed the Court to consider the photos of the Jordan Spur residence attached to the warrant application. (*Id.* at 15.) However, the attached photos depict a residence that could be likened to a barn, as Agents Cook and Swain's physical surveillance discovered. (Docs. 19-8 at 6; 23 at 8–9.) Consequently, the Court does not find this alleged omission to be misleading or material to finding probable cause.

Third, Wilson claims that Agent Cook failed to include Jenks' statement that merely because she had seen guns at Wilson's home in December "does not mean they are there now." (Doc. 19 at 15.) Assuming that this is a misleading omission, Jenks' cautionary remark would not effect a finding of probable cause because it pales in significance when compared to the overwhelming evidence

---

Deputy Schroeder had confirmed, which the Agents knew was Jordan Spur Road. Despite Wilson's vehement statements to the contrary, the Court does not find that this was intentionally misleading. Even if it were, it would not be material to finding probable cause, as explained thoroughly throughout this opinion. Similarly, the Court is also not convinced that Jenks' failure to recognize the Jordan Spur Road address is significant as she was consistently relying on law enforcement for the address rather than remembering it herself.

supplied by Candice as to the likelihood of Wilson possessing firearms which is detailed in the affidavit. (Doc. 19-8 at 14–16.)

### B. Allegedly material omissions relating to Candice

Wilson alleges that Agent Cook should have included in his affidavit Candice's statement that her children had told her that the firearms were stored at Wilson's friend's house. Wilson claims that this information was reliable and should have been included in the affidavit. Wilson goes on to point out that Candice told Agents Cook and Swain that Wilson tends to use his friend's houses to avoid his obligations to her. (Doc. 19 at 19–20.) Wilson argues that "plausible" use of his friend's homes to "evade the process of the law" should have been included in Agent Cook's affidavit because it would have cast doubt on where the guns were actually located. (*Id.* at 20.) The Court agrees that Wilson's admitted attempts to "evade the process of the law" would certainly have muddied the waters. However, the Court does not find that the mention of this purported use of his friend's homes to hide firearms would ultimately have helped him "evade the process of the law" in this case.

Neither of these alleged omissions satisfy Wilson's obligation to show that Agent Cook deliberately or recklessly disregarded the truth. At most, they establish that the guns *could* have been stored elsewhere. However, considering

Agent Cook's affidavit in its entirety, it is apparent that he supplied Judge Lynch with ample information from which probable cause to believe that Wilson had guns in his home could be determined. Candice reported that Wilson had taken 21 guns from her residence and provided Agent Cook with pictures and videos of Wilson with guns, receipts from Wilson's gun purchases, and emails between Wilson and gun brokers. Jenks reported that she had personally seen multiple firearms in Wilson's bedroom. A search of hunting licenses issued by Montana Fish, Wildlife, and Parks ("FWP") in 2016 showed that Wilson had obtained multiple licenses for which a firearm may be required. (Doc. 19-8 at 12.) Agent Cook supplied all of this information to Judge Lynch in his warrant application.

Agent Cook apparently did not fall for Wilson's attempts to "evade the process of the law" and Wilson has failed to show how Agent Cook's decision not to include information concerning Wilson's attempts to obscure the truth amounts to deliberate or reckless disregard for the truth by Agent Cook. Merely because Wilson intended to obscure the truth does not mean that Agent Cook's failure to fall for the ploy amounts to him disregarding the truth. Especially when Agents Cook and Swain were given more than adequate information from which to conclude that Wilson likely had guns at his home on Jordan Spur Road and Judge Lynch was supplied with this same information. For the same reasons, the omitted

comment of Wilson's minor children does not establish that Agent Cook deliberately or recklessly disregarded the truth and would not have rendered the affidavit "insufficient to establish probable cause." *Kyllo*, 37 F.3d at 529.

### C. Omission of veracity information

"Law enforcement officers must ordinarily disclose information regarding whether an informant has ulterior motivations for providing information for a search warrant affidavit." *Martinez-Garcia*, 397 F.3d at 1216 (citing *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995)). Wilson has made a "substantial preliminary showing" that Agent Cook omitted information concerning both Jenks' and Candice's motivation which undermines their credibility. (Doc. 19 at 16–18.) This evidence has not been disputed. (Docs. 19-2 at 4–6; 19-5 at 1–3; 23.) Jenks was angry and vengeful towards Wilson because he accused her of physically, emotionally, and sexually abusing him as a child and told her he was worried she would do the same thing to his children. (Docs. 19 at 16; 19-2 at 4–6.) Candice claims that most of the firearms are hers and she is seeking their return in the divorce proceedings because she is in "financial dire straits" and needs to sell them. (Docs. 19 at 17–18; 19-5 at 1–3.) Accordingly, Wilson has met the first prong of the *Franks* test with respect to both Jenks' and Candice's motivation.

Since Wilson has established the first prong, the Court assesses the materiality prong to determine whether, when considering this information, the affidavit nevertheless supports a finding of probable cause. *Martinez-Garcia*, 397 F.3d at 1216. In doing so, the Court considers the credibility of the informants, "including their history of providing reliable information in previous investigations and any prior criminal convictions for crimes of dishonesty." *Id.* Additionally, the Court examines whether the informants' information was "bolstered by independent police investigation of the tip" or corroboration by other informants. *Id.*

Here, the affidavit detailed Jenks' personal observance of firearms in Wilson's bedroom during her visit in December of 2016 and her statement that Wilson lived with his girlfriend, Anna Kopp ("Kopp"), and friend, Darrin Vickmark ("Vickmark"). (Doc. 19-8 at 13–14.) Also, that Candice had stated that Wilson lived on Jordan Spur Road with Kopp and Vickmark. (*Id.* at 14.) The affidavit detailed that Wilson drove Candice's truck which law enforcement independently witnessed parked at 4585 Jordan Spur Road. (*Id.* at 15.) The affidavit contained Agent Cook's confirmation from NorthWestern Energy that Wilson was the name on the accounts for 4585 Jordan Spur Road since November 17, 2016. (*Id.* at 16.) The affidavit stated that Wilson had taken 21 guns from

Candice's home. (*Id.* at 14.) The affidavit relayed Candice's statements that Wilson hunted every year and purchased firearms from online dealers as well as from Four-Corners Tactical in Bozeman, MT. (*Id.* at 14–15.) That Agent Cook confirmed that Wilson had obtained multiple hunting permits for 2016 from FWP. (*Id.* at 12.) And, that Agent Cook had received from Candice numerous pictures and videos of Wilson possessing and firing firearms as well as email exchanges detailing firearm sales and purchases by Wilson. (*Id.* at 16.) Importantly, Agent Cook's affidavit stated that Wilson was a convicted felon and prohibited person. (*Id.* at 12.)

The credibility of the informants is also well established. There is no evidence that either Jenks or Candice have been convicted of crimes of dishonesty nor that either has provided information in previous investigations. However, Jenks' testimony is corroborated by Candice's and vice versa. Candice's testimony was also corroborated by videos, pictures, emails, and receipts. Further, Jenks' and Candice's testimony was bolstered by independent police investigation performed by Agents Cook and Swain.

Considering this information along with the omitted information regarding Jenks' and Candice's ulterior motives, the Court concludes that the "totality of the circumstances" still supports a finding of probable cause to search 4585 Jordan

Spur Road. *See Gates*, 462 U.S. at 238. "Probable cause requires a fair probability, but not a certainty, that a search would yield evidence of crime." *Martinez-Garcia*, 397 F.3d at 1217 (citing *Gates*, 462 U.S. at 231–32)). Agent Cook's affidavit detailed sufficient evidence to find that it was fairly probable that Wilson would have guns in his home. The omission of the informants' ulterior motives does not change the conclusion that there was probable cause for the search.

### III. Staleness

Lastly, Wilson argues that the information contained in the affidavit was stale owing to the amount of time between Jenks' observations and her statement to Agents Cook and Swain. (Doc. 19 at 18–19.) Wilson cites no law in support of this position. (*Id.*) However, the warrant was not issued solely upon Jenks' statement that she had seen guns in Wilson's house in December of 2016. Instead, probable cause supporting the warrant is found in the litany of facts already thoroughly discussed in this Order which show that it was likely that Wilson would have guns in his home at the time of the execution of the warrant.

Wilson's Motion fails to make the requisite showing to justify a *Franks* Hearing on this matter. Consequently, the Court will not address Wilson's contingent argument that evidence gained subsequent to the warranted search of

his home should be suppressed as fruit of the poisonous tree. (Doc. 19 at 19.)

The Court recognizes that this Order comes after the deadline for a plea agreement in this case. The Court will extend this deadline in light of this Order. Accordingly,

IT IS ORDERED that Wilson's Opposed Motion to Suppress (Doc. 18) is DENIED.

IT IS FURTHER ORDERED that Wilson's Motion to Withdraw Certain Exhibits and to File Same Under Seal (Doc. 20) and Motion to Re-File Under Seal (Doc. 21) are GRANTED. The Clerk of Court is directed to file Exhibits 5, 7, and 9 (Docs. 19-5; 19-7; 19-9) under seal.

IT IS FURTHER ORDERED that Wilson's Unopposed Motion to Extend Plea Deadline and to Continue Trial for 30 Days (Doc. 27) is GRANTED. The trial scheduled for December 18, 2017, is VACATED and RESET for **January 16, 2018, at 9:00 am in the Russell Smith Courthouse, Missoula, Montana**.

IT IS FURTHER ORDERED that the following associated deadlines are VACATED. The plea agreement deadline is reset for January 4, 2018. Jury instructions and trial briefs are due on or before January 12, 2018. The JERS deadline is reset for January 9, 2018. All other aspects of the Court's October 18, 2017, Scheduling Order (Doc. 14) shall remain in full force and effect absent

further order of the Court.

Dated this 8th day of December, 2017.

_____
Dana L. Christensen, Chief District Judge
United States District Court